NO. 07-08-0350-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

SEPTEMBER 11, 2008

______________________________


IN RE RUBIO ROBERTO MONTENEGRO, RELATOR

_______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          Relator, Rubio Roberto Montenegro, an inmate proceeding pro se and in forma
pauperis,


 seeks a writ of mandamus to compel Caroline Woodburn, the Potter County
District Clerk, to perform her ministerial duty regarding his notice to sue certain plaintiffs
for wrongful imprisonment. He alleges, specifically, that she failed to endorse his petition
with a file number, the date and time that it was filed, and affix her official signature thereto. 
We dismiss for want of jurisdiction.
          This Court has the authority to issue writs of mandamus against a judge of a district
or county court in our district and all writs necessary to enforce our jurisdiction. Tex. Gov't
Code Ann. § 22.221(b) (Vernon Supp. 2004). In order for a district clerk to fall within our
jurisdictional reach, it must be established that the issuance of the writ of mandamus is
necessary to enforce our jurisdiction. In re Coronado, 980 S.W.2d 691, 692-93
(Tex.App.–San Antonio 1998, no pet.). Relator has not demonstrated that the exercise of
our mandamus authority against the Potter County District Clerk is appropriate to enforce
our jurisdiction. Consequently, we have no authority to issue a writ of mandamus against
the Potter County District Clerk.
          Accordingly, the petition for writ of mandamus is dismissed for want of jurisdiction.
 
                                                                           Patrick A. Pirtle

                                                                                 Justice




 of his motion to suppress. 
Through one point of error, appellant contends that by denying his motion, the trial court
abused its discretion. We affirm.
 
 
Background
          After a traffic stop, appellant was charged by indictment with intentionally and
knowingly possessing cocaine in an amount of one gram or more but less than four
grams.


 The indictment later was amended to include an enhancement paragraph based
on a prior felony conviction. Thereafter, appellant filed a motion to suppress the evidence
found during the stop, arrest, and search. Following a hearing, the trial court denied
appellant’s motion to suppress. Appellant, pursuant to a plea agreement, plead guilty to
the offense charged and was sentenced to nine years of imprisonment and a $1,000 fine. 
This appeal followed.
          One witness, an Amarillo police officer, testified at the hearing on appellant’s motion
to suppress. He testified that about noon on the day in question he saw a vehicle with a
temporary tag traveling ahead of him. He then observed the driver, identified later as
appellant, make a wide right turn onto Sanborn Street. Concluding he had observed two
traffic violations, one involving the tag and the other involving the wide turn, the officer
conducted a traffic stop. When he made contact with appellant and requested his driver’s
license, appellant told him he did not have one. Appellant then got out of the car and the
officer requested consent to search him because “[h]e was shaking” and said he didn’t
have any identification. 
 
          During his search of appellant, the officer located a wallet containing identification. 
The officer conducted a check on appellant’s identification, finding seven outstanding
warrants. The officer placed appellant under arrest on the warrants and double-checked
the dealer’s tags on the car to ensure the vehicle was not stolen. The officer determined
that the tag was legitimate. The officer then searched the vehicle incident to arrest and
found narcotics that resulted in appellant’s present prosecution. 
Analysis
          In appellant’s point of error, he contends the trial court abused its discretion by
denying the motion to suppress evidence derived from the traffic stop as there was no
“inherently illegal act” to justify the warrantless stop. Appellant does not appear to contest
his arrest based on the outstanding warrants or the search incident to arrest.


 Instead, he
argues the initial stop was not based on reasonable suspicion. We will address only that
contention. 
            A trial court's ruling on a motion to suppress is reviewed for abuse of discretion.
Oles v. State, 993 S.W.2d 103, 106 (Tex.Crim.App.1999). In a suppression hearing, the
trial court is the sole judge of the credibility of the witnesses and the weight to be given
their testimony. State v. Ross, 32 S.W.3d 853, 855-56 (Tex.Crim.App.2000). Under the
applicable standard, we will review the record evidence and all reasonable inferences
therefrom in the light most favorable to the trial court's ruling. Villarreal v. State, 935
S.W.2d 134, 139 (Tex.Crim.App.1996); Taylor v. State, 20 S.W.3d 51, 54-55 (Tex.App.–
Texarkana 2000, pet. ref'd).
          In reviewing trial court rulings on matters such as motions to suppress, appellate
courts afford almost total deference to trial court determinations of historical facts. Guzman
v. State, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). However, detention and reasonable
suspicion are by nature legal concepts and are properly subject to de novo review. Hunter
v. State, 955 S.W.2d 102, 107 (Tex.Crim.App.1997); Sanders v. State, 992 S .W.2d 742,
744 (Tex.App.–Amarillo 1999, pet. ref'd). Accordingly, for purposes of Fourth Amendment
analysis we give appropriate deference to the trial court's determination of historical facts,
but we review the decision of the trial court de novo as to whether the historical facts,
viewed from the standpoint of an objectively reasonable person so situated as was the
police officer, amount to “reasonable suspicion” sufficient to justify an investigatory
detention. Ornelas v. United States, 517 U.S. 690, 697-99, 116 S.Ct. 1657, 1661-62, 134
L.Ed.2d 911 (1996); Guzman, 955 S.W.2d at 89.
          At the hearing, the officer testified that appellant’s vehicle first attracted his attention
because it had a dealer’s or paper tag rather than a regular license plate. He noted that
such tags may be suspicious, particularly if they are unreadable, because the police
department commonly finds stolen cars with temporary tags covering the hard plates. He
also testified that because of the variety of types of temporary tags, it is hard to tell exactly
what type of plate is on a car when driving behind it. Here, the officer said the tag was
attached only in one place, causing it to flap and making it difficult to read in traffic. 
          With respect to appellant’s right turn, the officer stated appellant turned into the
center of Sanborn Street. The record indicates the residential street had no center stripe. 
The officer said appellant was “straddling” the center of the road as he turned, and agreed
with the prosecutor that the center of appellant’s car was in the center of the road. 
          Evidence showed that a pothole or deteriorated portion of the asphalt roadway was
located on the right side of the roadway, about half a block, or “12 houses” from the
intersection at which appellant made his turn. The officer said he stopped appellant based
on both of his observed violations.


 
          While a police officer must have probable cause for a full custodial arrest, a mere
stop of an individual for the purposes of investigation does not require such substantial
justification. Gajewski v. State, 944 S.W.2d 450, 452 (Tex.App.–Houston [14th Dist.] 1997,
no pet.), citing Terry v. Ohio, 392 U.S. 1, 20-22, 88 S.CT. 1868, 1879-81, 20 L.Ed.2d 889
(1968). Thus, for a temporary detention, an officer must have reasonable suspicion,
shown through specific articulable facts, that some unusual activity is or has occurred, that
the detained person is connected with the activity, and that the unusual activity is related
to the commission of a crime. Hoag v. State, 728 S.W.2d 375, 378-80 (Tex.Crim.App.
1987). This determination is based on the totality of the circumstances. Garcia v. State,
43 S.W.3d 527 (Tex.Crim.App. 2001). There is no requirement that a particular statute be
violated in order to give rise to reasonable suspicion. Gajewski, 944 S.W.2d at 452;
Lockett v. State, No. 01-08-00225-CR, 2009 WL 40234, *3 (Tex.App.–Houston [1st Dist.]
Jan. 8, 2009, no pet.) (mem. op., not designated for publication). The subjective intent of
the officer is irrelevant to the determination of the existence of reasonable suspicion;
instead, we apply an objective standard, inquiring only whether the evidence reveals an
objective basis for the stop. Garcia, 43 S.W.3d at 530; Powell v. State, 5 S.W.3d 369,
376-77 (Tex.App.–Texarkana 1999, pet. ref’d), cert. denied, 529 U.S. 1116, 120 S.Ct.
1976, 146 L.Ed.2d 805 (2000).
          We find the trial court properly could have concluded the officer testified to facts
giving rise to a reasonable suspicion appellant violated a traffic law in the manner of his
right turn.


 Appellant and the State both refer to section 545.101 of the Transportation
Code, which requires a driver to make right turns as closely as practicable to the right-hand
curb or edge of the roadway. Tex. Transp. Code Ann. § 545.101(a) (Vernon 1999). At the
hearing, appellant relied on the obstruction in the road to explain his wide turn. See Tex.
Transp. Code Ann. § 545.051(a)(2) (Vernon 1999) (requiring driving on the right half of the
roadway unless, inter alia, an obstruction necessitates moving to the left). But evidence
shows that the pothole or deteriorated asphalt was not located at the intersection but was
“12 houses” down the street from the intersection. The trial court was free to determine
the weight to be given the evidence of an obstruction in the road. There also was some
uncertainty in the testimony as to whether appellant’s vehicle was merely near the center
of Sanborn or was in the center of the street, but the trial court was free also to accept the
testimony he was “straddling” the center. See Guzman, 955 S.W.2d at 89; Ross, 32
S.W.3d at 855-56.
          Appellant contends our determination of the reasonableness of the stop should be
controlled by Hernandez v. State, 983 S.W.2d 867, 869 (Tex.App.–Austin 1998, pet. ref’d). 
There, the officer stopped a vehicle immediately after observing it drift briefly over the white
line dividing two lanes of traffic traveling in the same direction. The court concluded that
this single brief instance of drifting slightly into an adjacent lane of traffic did not alone
provide the officer with reasonable suspicion that a criminal traffic offense had been
committed. Id. A similar conclusion was reached in Ehrhart v. State, 9 S.W.3d 929
(Tex.App.–Beaumont 2000, no pet.) involving an allegation of lane straddling, and State
v. Tarvin, 972 S.W.2d 910, 912 (Tex. App.–Waco 1998, no pet.) involving an allegation of
lane drifting. As the State points out, each of these cases involved suspected violations
of the statute requiring drivers to drive within a single lane of traffic. See Tex. Transp.
Code Ann. § 545.060 (Vernon 1999). That statute further provides a driver may not move
from the single lane unless that movement can be made safely. Id. at 545.060(a)(2). The
holdings of the cases on which appellant relies depended at least in part on the absence
of evidence the defendant’s action of crossing a lane dividing line was unsafe. See, e.g.,
Hernandez, 983 S.W.2d at 870-71. Transportation Code § 545.101, on which the State
relies here, contains no exception for deviations made safely. See Tex. Transp. Code Ann.
§ 545.101(a) (Vernon 1999). Appellant’s cited cases are thus inapposite. 
          The evidence presented at the hearing on appellant’s motion to suppress supports
the trial court’s ruling. Accordingly, we overrule appellant’s sole point of error on appeal
and affirm the trial court’s judgment.
 
                                                                           James T. Campbell

                                                                                     Justice











Do not publish.