Opinion filed May 10, 2012

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00133-CR 

                                                    __________

 

                             ROBERT
MARTIN HANKS, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 42nd District Court

                                                            Taylor
County, Texas

                                                    Trial
Court Cause No. 23885A 

 



 

                                            M
E M O R A N D U M   O P I N I O N

            Robert
Martin Hanks appeals his conviction for the first-degree felony offense of
possession of four grams or more but less than two hundred grams of
methamphetamine with the intent to deliver.  Appellant pleaded guilty to the
offense after the trial court denied his first amended motion to suppress
evidence.  Pursuant to a plea bargain agreement, the trial court sentenced
appellant to eight years confinement.  In this appeal, appellant challenges the
trial court’s denial of his first amended motion to suppress.  We affirm.

Issues
on Appeal

            In
each of his seven appellate issues, appellant contends that the trial court
erred by denying his first amended motion to suppress evidence.  Specifically,
appellant contends that the trial court erred by denying his motion (1) because
the police officer discovered the methamphetamine as a result of illegally
detaining him after a traffic stop (first issue); (2) because the police
officer engaged in an illegal warrantless search of the passenger compartment
of his vehicle, the trunk of the vehicle, the luggage that was located in the
trunk, and an unsealed envelope that was located in that luggage (second
through fifth issues); and (3) because the police officer intentionally,
knowingly, or in reckless disregard for the truth made materially false
statements in the affidavit that was used to obtain a warrant to search a
sealed FedEx envelope that was located in the luggage (sixth and seventh
issues).

Evidence
at Suppression Hearing

            On April
17, 2009, at about 9:30 a.m., Special Agent Robert David Ramirez of the West
Central Texas Interlocal Crime Task Force was working criminal interdiction on
Interstate 20 in Taylor County.  At that time, Agent Ramirez observed appellant
driving a 2009 Hyundai in a westbound lane of the highway.  Agent Ramirez’s
radar indicated that appellant was traveling seventy-eight miles per hour.  Therefore,
Agent Ramirez stopped appellant for a speeding violation.  The stop was
videotaped on a camera in Agent Ramirez’s car, and the State introduced into
evidence a copy of the video (in DVD format).  The DVD contained audio and
video of the stop.  We have reviewed the DVD.  Many of appellant’s statements
on the DVD are inaudible because of the background noise on Interstate 20.  The
matters depicted in the video and the statements that can be heard on the audio
are consistent in material respects with Agent Ramirez’s testimony.    

            Agent
Ramirez stopped his car behind appellant’s car on the shoulder of the highway. 
Agent Ramirez got out of his car, approached the passenger’s side of
appellant’s car, and then spoke with appellant through the open passenger’s
side window.  Agent Ramirez testified that he smelled the odor of marihuana emanating
from appellant’s car.  Appellant gave his driver’s license and a copy of a
rental agreement for the car to Agent Ramirez at his request.  Appellant was
listed as the primary driver of the car in the rental agreement.  Agent Ramirez
asked appellant questions about where he was going.  Appellant told Agent
Ramirez that he was lost, and appellant asked Agent Ramirez how to get to
California.  Agent Ramirez testified that appellant was quiet and lethargic and
looked really tired.  Agent Ramirez returned to his car, where he determined
that appellant’s driver’s license status was clear and that appellant had no
outstanding warrants.

            Agent
Ramirez returned to appellant’s car and gave appellant’s driver’s license and
the rental agreement back to appellant.  Agent Ramirez still detected the smell
of marihuana.  The DVD shows that Agent Ramirez then said, “[Appellant], let me
ask you a question real quick.” Agent Ramirez testified that appellant
responded, “Okay.”  The DVD shows that, before asking appellant a question,
Agent Ramirez told appellant, “I am done with my traffic stop”; “I am going to
give you a break on that and let you make it okay”; and “I understand you have
been driving awhile and are probably tired.”  Agent Ramirez then told appellant
that he worked for the drug task force.  He asked appellant, “You wouldn’t have
anything illegal in your vehicle, would you?”  Appellant’s response, if any, to
this question is inaudible on the DVD.  Agent Ramirez testified that appellant
told him there was a marihuana blunt in the vehicle.  

The
DVD shows that Agent Ramirez asked appellant if he could see the blunt.  Appellant
looked for the blunt in the front seat area of the car but could not find it.  The
DVD shows that Agent Ramirez told appellant not to worry and that Agent Ramirez
said that he would find the blunt.  Agent Ramirez then asked appellant to step
out of the car.  Agent Ramirez testified that he asked appellant if that was
okay and that appellant responded, “Okay.”  Appellant exited the car, and Agent
Ramirez asked appellant if he could perform a pat-down search.  Appellant
responded, “Sure,” and Agent Ramirez performed the search.  During the pat-down
search, Agent Ramirez did not find any weapons or drugs.  Agent Ramirez and
appellant briefly discussed appellant’s employment history.  Appellant told
Agent Ramirez that he was currently unemployed.  Following the discussion about
appellant’s employment history, appellant leaned against the front of Agent Ramirez’s
car with his back to the camera that was in the car.

Agent
Ramirez looked in appellant’s car.  He testified that he found particles of
marihuana on the passenger floorboard and a usable amount of marihuana in the
console.  The DVD shows that appellant again told Agent Ramirez that the blunt
was in the car.  The DVD also shows that appellant told Agent Ramirez that he
had smoked the blunt the day before.  Agent Ramirez did not find the blunt in
the car.  He opened the trunk to appellant’s car.  He found suitcases and bags
in the trunk.  Agent Ramirez said that he also found pieces of marihuana in the
trunk.

Another
police officer arrived at the scene as backup.  Agent Ramirez noticed that one
of the suitcases was locked.  He asked appellant if he could open it.  Agent
Ramirez testified that appellant said, “Yes.”  Agent Ramirez asked appellant if
he had the key to the suitcase’s lock. Appellant told Agent Ramirez that the
key was with the set of keys in the ignition.  Agent Ramirez retrieved the keys
from the ignition and handed them to appellant.  Appellant told Agent Ramirez
which key would open the lock and handed the keys back to him.  Agent Ramirez
said that he asked appellant whether it was okay for him to open the lock and
that appellant responded, “Okay.”  Inside the suitcase, Agent Ramirez found a
white bowl that had marihuana residue in it.  He also found a sealed FedEx
envelope that was addressed to appellant.  Appellant said that the envelope
belonged to him but that he did not know what was in it.  The DVD shows that
Agent Ramirez asked appellant if he could open the envelope and that appellant responded
to Agent Ramirez by telling him that he could not open it.  Appellant also said
that he did not want the envelope to be opened.  Agent Ramirez set the envelope
to the side.

Appellant
told Agent Ramirez that he had marihuana in another suitcase.  The DVD shows
that appellant said, “I have weed in the other bag.”  This suitcase was also
locked.  Agent Ramirez asked appellant if he had a key to the lock on this
suitcase.  Appellant showed Agent Ramirez the key, and Agent Ramirez unlocked
the suitcase.  Inside the suitcase, Agent Ramirez found an open FedEx envelope
that contained marihuana.  This envelope was also addressed to appellant.  Agent
Ramirez placed appellant under arrest for possession of marihuana.  Agent
Ramirez never found the marihuana blunt.

Agent
Ramirez took the sealed FedEx envelope to his office.  With the help of another
agent, Agent Ramirez prepared an affidavit so that he could attempt to obtain a
search warrant for the envelope.  After completing the affidavit, he applied
for and obtained a search warrant to open the envelope.  He opened the envelope.
 It contained another sealed FedEx envelope.  Agent Ramirez opened this
envelope.  Inside the envelope, he found five plastic packages containing what
field-tested to be crystal methamphetamine.

The
Trial Court’s Ruling

            After
the evidence was presented at the suppression hearing, appellant’s counsel
argued that appellant had not consented to a search of his luggage.  The trial
court disagreed and concluded that appellant had consented to a search of the
luggage.  Therefore, the trial court denied appellant’s first amended motion to
suppress.  No findings of fact or conclusions of law were filed or requested.  

Standard
of Review

            We review
a trial court’s ruling on a motion to suppress for an abuse of discretion.  Lujan v.
State, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011); Oles v. State,
993 S.W.2d 103, 106 (Tex. Crim. App. 1999).  In reviewing a ruling on a motion
to suppress, we apply a bifurcated standard of review.  Hubert v. State,
312 S.W.3d 554, 559 (Tex. Crim. App. 2010); Valtierra v. State, 310
S.W.3d 442, 447 (Tex. Crim. App. 2010).  First, we afford almost total
deference to the trial court’s determination of historical facts.  Valtierra,
310 S.W.3d at 447.  The trial court is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony.  Id.;
Garza v. State, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007).  When, as
here, no findings of fact were requested or filed, we view the evidence brought
forward at the suppression hearing in the light most favorable to the trial
court’s ruling and assume that the trial court made implicit findings of fact
supported by the record.  Valtierra, 310 S.W.3d at 447; Ford v. State,
158 S.W.3d 488, 493 (Tex. Crim. App. 2005).  Second, we review de novo the
trial court’s application of law to facts.  Hubert, 312 S.W.3d at 559; Valtierra,
310 S.W.3d at 447.  We will sustain the trial court’s ruling if it is reasonably
supported by the record and is correct on any theory of law applicable to the
case.  Valtierra, 310 S.W.3d at 447–48; State v. Dixon, 206
S.W.3d 587, 590 (Tex. Crim. App. 2006).

The
Detention Was Reasonable

In
his first issue, appellant contends that the purpose of the stop was completed
before Agent Ramirez questioned him about whether he had anything illegal in
the vehicle.  Therefore, appellant contends that he was being illegally
detained when Agent Ramirez questioned him about illegal items and drugs.

Police
officers may stop and detain a person if they have a reasonable suspicion that
a traffic violation is in progress or has been committed.  Garcia v. State,
827 S.W.2d 937, 944 (Tex. Crim. App. 1992).  A traffic stop is a detention and
must be reasonable under the United States and Texas Constitutions.  Davis
v. State, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997); Caraway v. State,
255 S.W.3d 302, 307 (Tex. App.—Eastland 2008, no pet.).  To be reasonable, a
traffic stop must be temporary and last no longer than necessary to effectuate
the purpose of the stop.  Florida v. Royer, 460 U.S. 491, 500 (1983); Davis,
947 S.W.2d at 245.  Reasonableness is measured in objective terms by examining
the totality of the circumstances.  Ohio v. Robinette, 519 U.S. 33, 39
(1996); Caraway, 255 S.W.3d at 307.  

During
a routine traffic stop, an officer may check for outstanding warrants and
demand identification, a valid driver’s license, and proof of insurance from
the driver.  Kothe v. State, 152 S.W.3d 54, 63 (Tex. Crim. App, 2004); Caraway,
255 S.W.3d at 307.  If, during that investigation, an officer develops
reasonable suspicion that another violation has occurred, the scope of the
initial investigation expands to the new offense.  Goudeau v. State, 209
S.W.3d 713, 719 (Tex. App.—Houston [14th Dist.] 2006, no pet.).  When the
reason for the stop has been satisfied, the stop may not be used as a “fishing
expedition for unrelated criminal activity.”  Davis, 947 S.W.2d at 243
(quoting Robinette, 519 U.S. at 41 (Ginsburg J. concurring)).  Once the
officer concludes the investigation of the conduct that initiated the stop,
continued detention of a person is permitted only if there is reasonable
suspicion to believe that another offense has been committed.  Id. at
245; Caraway, 255 S.W.3d at 308.  

Reasonable
suspicion must be founded on specific, articulable facts that, when combined
with rational inferences from those facts, would lead the officer to conclude
that a particular person actually is, has been, or soon will be engaged in
criminal activity.  Crain v. State, 315 S.W.3d 43, 52 (Tex. Crim. App.
2010).  Whether the totality of the circumstances is sufficient to support an
officer’s reasonable suspicion is a legal question that we review de novo.  Madden
v. State, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007).

Agent
Ramirez stopped appellant for committing the traffic violation of speeding.  Agent Ramirez
testified that he smelled the odor of marihuana during his initial contact with
appellant and that he again detected the smell of marihuana when he returned to
appellant’s car after checking for outstanding warrants.  As the trier of fact,
the trial court was entitled to believe Agent Ramirez’s testimony.  Valtierra,
310 S.W.3d at 447.  Based on that testimony, the trial court could have
reasonably concluded that the odor of marihuana was emanating from appellant’s
car when Agent Ramirez contacted appellant.  The odor of marihuana provides
reasonable suspicion of criminal activity to justify an investigatory detention
and probable cause to justify a search of a vehicle without a warrant.  Razo
v. State, 577 S.W.2d 709, 711 (Tex. Crim. App. 1979); Taylor v. State,
20 S.W.3d 51, 55–56 (Tex. App.—Texarkana 2000, pet. ref’d); Small v. State,
977 S.W.2d 771, 774 (Tex. App.—Fort Worth 1998, no pet.).  Thus, during his
investigation of the traffic violation, Agent Ramirez developed reasonable
suspicion that appellant had committed or was committing a marihuana offense. 
The continued detention of appellant was justified for the purpose of
investigating this offense.  Davis, 947 S.W.2d at 245; Goudeau,
209 S.W.3d at 719.

Alternatively,
the trial court could have concluded that Agent Ramirez asked appellant the
question about whether he had anything illegal in the car during an encounter
and not an investigative detention.  It is not per se unreasonable for a police
officer to ask questions or request consent to search after detention for a
traffic stop is completed, as long as a message is not conveyed by the
officer’s words or acts that compliance is required.  Caraway v. State,
255 S.W.3d at 310–11; Saldivar v. State, 209 S.W.3d 275, 282 (Tex. App.—Fort
Worth 2006, no pet.).  The issue is whether Agent Ramirez, by word or deed,
conveyed a message in a manner such that a reasonable person would conclude
compliance was required.  Saldivar, 209 S.W.3d at 282.  Agent Ramirez
said, “[L]et me ask you a question real quick,” immediately before telling
appellant, “I am done with my traffic stop.”  Agent Ramirez also told appellant
that he was going to give him a break on the traffic violation.  Agent Ramirez
explained that he worked for the drug task force and then asked the question, “You
wouldn’t have anything illegal in your vehicle, would you?”  Agent Ramirez did not
tell appellant that he had to answer the question.  Nor did Agent Ramirez
engage in any conduct indicating that appellant had to answer the question. 
The evidence supports a finding that Agent Ramirez did not convey a message in
a manner such that a reasonable person would conclude that answering his
question was required.  Therefore, the trial court could have concluded that
the question occurred in an encounter.  Appellant’s response to the question that
a blunt was in the car provided Agent Ramirez reasonable suspicion to justify
an investigatory detention.

Agent
Ramirez did not illegally detain appellant.  Therefore, appellant’s first issue
is overruled.

The
Warrantless Search of the Car and Its Contents Was Reasonable

Appellant’s
second through fifth issues involve Agent Ramirez’s warrantless search of
appellant’s car and the contents in the car.  In those issues, appellant
contends that Agent Ramirez illegally searched the passenger compartment of the
car, the trunk of the car, the luggage that was in the trunk, and the envelope
containing marihuana.[1] 
Appellant asserts that the warrantless search was illegal because it was made
without his consent. 

We
have summarized the evidence above.  Based on that evidence, the trial court could
have reasonably concluded that the search of the car and its contents was
reasonable for two independent reasons: (1) that Agent Ramirez had probable
cause to search the car and its contents and (2) that appellant consented to
the search.

As
stated above, the odor of marihuana gave Agent Ramirez probable cause to perform
a warrantless search of appellant’s car.  Razo, 577 S.W.2d at 711; Taylor,
20 S.W.3d at 56; Small, 977 S.W.2d at 774.  If probable cause justifies
the search of a lawfully stopped vehicle, it justifies the search of every part
of the vehicle and its contents that may conceal the object of the search.  Neal
v. State, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008); Dahlem, II v.
State, 322 S.W.3d 685, 689 (Tex. App.—Fort Worth 2010, pet. ref’d). 
Therefore, Agent Ramirez was justified in searching the car, the passenger
compartment of the car, the trunk, the luggage, and the contents in the luggage. 
Additionally, appellant told Agent Ramirez that he had a marihuana blunt inside
the car, and Agent Ramirez found marihuana on the floorboard and in the console
when he searched inside the car.  These facts provided additional support for
the conclusion that Agent Ramirez had probable cause to search the trunk and
the luggage.

Consent
to search operates as an exception to the Fourth Amendment’s warrant
requirement.  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); State
v. Ibarra, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997); Myers v. State,
203 S.W.3d 873, 886 (Tex. App.—Eastland 2006, pet. ref’d).  The consent must be
voluntarily given to be considered effective, and voluntariness is a question
of fact to be determined from the totality of the circumstances.  Carmouche
v. State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000); Myers, 203
S.W.3d at 886.  To be valid, consent must “not be coerced, by explicit or
implicit means, by implied threat or covert force.”  Carmouche, 10
S.W.3d at 331 (quoting Schneckloth, 412 U.S. at 228).  The United States
Constitution requires the State to prove voluntariness of consent by a
preponderance of the evidence.  Carmouche, 10 S.W.3d at 331.  The Texas constitution
requires the State to show by clear and convincing evidence that the consent
was freely given.  Id.; Myers, 203 S.W.3d at 886.  If the record
supports a finding by clear and convincing evidence that the consent to search
was freely and voluntarily given, we will not disturb that finding.  Carmouche,
10 S.W.3d at 331.

Appellant
looked for the marihuana blunt in his car but could not find it.  Agent Ramirez
told appellant he would find it and asked appellant to get out of the car. 
Agent Ramirez said that he asked appellant, “Is that okay?” and that appellant
responded, “Okay.”  Upon Agent Ramirez’s request, appellant got out of the
vehicle.  Agent Ramirez then searched the car. Appellant did not voice any
objection to the search.  Agent Ramirez also testified that he asked if he
could open one of the locked suitcases and that appellant responded, “Yes.”  Appellant
told Agent Ramirez that the key to the suitcase was with the keys in the
ignition.  Agent Ramirez retrieved the keys from the ignition and gave them to
appellant.  Appellant then told Agent Ramirez which key would open the suitcase
and handed the keys back to Agent Ramirez.  Agent Ramirez then opened the
suitcase.  While he was searching that suitcase, he found the sealed FedEx
envelope.  He asked appellant if he could look inside the envelope, but
appellant told him that he could not.  Appellant also told him that he had
marihuana in the other suitcase.  The other suitcase was also locked.  Agent
Ramirez asked appellant if he had the key to this suitcase, and appellant
showed him the key that would open it.  Agent Ramirez then opened the other
suitcase.

As
the trier of fact, the trial court was entitled to believe Agent Ramirez’s
testimony that appellant responded, “Okay,” when Agent Ramirez said that he
would find the blunt and that appellant responded, “Yes,” when Agent Ramirez
asked whether it was okay for him to open the lock on the first suitcase. 
Although these responses cannot be heard on the audio portion of the DVD,
appellant’s conduct was consistent with having made such responses.  He showed
Agent Ramirez the keys that would open the locks on the suitcases.  Appellant
gave no indication of any objection to the search of the car, trunk, or
suitcases other than telling Agent Ramirez that he could not open the sealed
FedEx package.  Looking to the totality of the circumstances, the trial court could
have reasonably concluded that appellant freely and voluntarily consented to
the search of the car, trunk, and suitcases.  Appellant’s second, third, fourth,
and fifth issues are overruled.

The
Search Warrant Affidavit

In
his sixth and seventh issues, appellant contends that Agent Ramirez’s search
warrant affidavit contained materially false statements that were made
deliberately, knowingly, or with reckless disregard for the truth in violation
of Franks v. Delaware, 438 U.S. 154 (1978), and that, therefore, the
trial court erred by denying his first amended motion to suppress.  Under Franks,
a defendant who makes a substantial preliminary showing that a false statement
was made in a warrant affidavit knowingly and intentionally, or with reckless
disregard for the truth, may be entitled by the Fourth Amendment to a hearing, upon
the defendant’s request.  Harris v. State, 227 S.W.3d 83, 85 (Tex. Crim.
App. 2007).  This hearing is required only where the false statement is
essential to the probable cause finding.  If, at the hearing, the defendant
establishes the allegation of perjury or reckless disregard by a preponderance
of the evidence, the false material in the affidavit is set aside.  If the
affidavit’s remaining content does not then still establish probable cause, the
search warrant must be voided and the evidence resulting from that search
excluded.  Id. (citing Franks, 438 U.S. at 155–56).

To
require the trial court to hold a Franks evidentiary hearing and to
preserve the issue for appellate review, a defendant must (1) allege deliberate
falsehood or reckless disregard for the truth by the affiant, specifically
pointing out the portion of the affidavit claimed to be false; (2) accompany
these allegations with an offer of proof stating the supporting reasons; and
(3) show that, when the portion of the affidavit alleged to be false is
excised from the affidavit, the remaining content is insufficient to support
the issuance of the warrant.  Harris, 227 S.W.3d at 85–86; Cates v.
State, 120 S.W.3d 352, 356 (Tex. Crim. App. 2003).  Thus, specific
allegations and evidence must be apparent in the pleadings in order for a trial
court to even entertain a Franks proceeding.  Harris, 227 S.W.3d
at 85.

Appellant
did not meet the requirements for obtaining a Franks hearing in the trial
court.  He did not allege a Franks violation in his first amended motion
to suppress.  He also did not request a Franks hearing in the trial
court.  Appellant’s counsel made no mention of Franks until his closing
argument at the suppression hearing when he addressed the issue of whether
appellant had consented to a search of the luggage.  Specifically, appellant’s
counsel stated as follows:

While
the officer may have had probable cause to conduct a search because of this
talk about marijuana, the warrant itself, unless there can be some basis upon
which -- and we know what the basis is -- for the suspected party to consent to
the search of the vehicle.  We know what that basis is.  That basis is the
business just before the key was presented, which I contend demonstrates the
audio was good enough to demonstrate that there wasn’t consent, therefore, the
affidavit that was presented to the Magistrate with respect to the FedEx
envelope that later was found to contain methamphetamine contains what I
believe to be a materially false statement which is of the nature of a Franks
problem.

 

Appellant’s
counsel’s mere reference to Franks in his closing argument did not
satisfy the pleading and evidentiary requirements for obtaining a Franks
hearing.  Harris, 227 S.W.3d at 85.      Because appellant failed to
make the substantial preliminary showing required by Franks, he has not
preserved his sixth and seventh issues for appellate review.  Harris,
227 S.W.3d at 85–86.  Additionally, we note that the evidence at the
suppression hearing provides no support for appellant’s contention that Agent
Ramirez’s search warrant affidavit violates Franks.  Appellant’s sixth
and seventh issues are overruled.  

This
Court’s Ruling

            The trial court did not
abuse its discretion in denying appellant’s first amended motion to suppress.  The
judgment of the trial court is affirmed.

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE


May 10, 2012

Do not publish.  See Tex.
R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J.









                [1]In
one part of his brief, appellant indicates that, in his fifth issue, he is
challenging Agent Ramirez’s search of the sealed FedEx envelope.  However,
appellant’s brief makes clear that his second through fifth issues relate to
Agent Ramirez’s warrantless search of the car and its contents.  Agent Ramirez
did not open the sealed FedEx envelope until after he obtained the search
warrant.  Appellant’s sixth and seventh issues relate to the search of the
sealed FedEx envelope.