

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-12-00038-CR

---

JOHNATHAN J. DARDEN, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 115th District Court
Upshur County, Texas
Trial Court No. 16,004

---

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

After his conviction by a jury of two counts of aggravated sexual assault of a child,[1] Johnathan J. Darden was sentenced to life imprisonment on each count.[2] We affirm the judgment of the trial court because (1) no error was preserved on the public-trial issue, (2) no error was preserved regarding testimony that Darden invoked his right to counsel, (3) the trial court did not abuse its discretion in denying Darden a continuance, (4) failing to read the enhancement allegation in the jury's presence was harmless error, and (5) allegations of ineffective assistance of counsel were not proven.

*(1)    No Error Was Preserved on the Public-Trial Issue*

Before jury selection, the State advised the trial court that Darden wanted to have his mother present during jury selection, but that she was an intended witness for the State. In response, the trial judge stated, "I can't do it." Defense counsel then indicated that he likewise intended to call Darden's mother as a witness.[3] The court was advised that Darden's godfather was also present and was asked whether he could be present during jury selection. The court determined that family members who were not to be witnesses could be present during jury selection. Defense counsel then asked the trial court if he could have a minute to advise Darden that his mother could not be present in the courtroom during jury selection. No objection to her exclusion was voiced.

---

[1]TEX. PENAL CODE ANN. § 22.021 (West Supp. 2012).

[2]The sentences are to run concurrently.

[3]Although Darden's mother was sworn as a witness, she was not called to testify by either party.

Darden now complains that his mother's exclusion from the courtroom during jury selection violated his right to a public trial. *See Steadman v. State*, 360 S.W.3d 499 (Tex. Crim. App. 2012). The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution "the right to a . . . public trial." U.S. CONST. amend. VI. The right to a public trial is incorporated by the Fourteenth Amendment to be binding on the states. *Duncan v. Louisiana*, 391 U.S. 145, 148 (1968). The right to a public trial also extends to the jury selection process. *Presley v. Georgia*, 558 U.S. 209, 130 S.Ct. 721, 724 (2010) (per curiam) (citing *Waller v. Georgia*, 467 U.S. 39 (1984)); *see also Steadman*, 360 S.W.3d at 504–05. The violation of a criminal defendant's right to a public trial is structural error, and thus does not require a showing of harm to warrant a reversal. *Presley*, 558 U.S. 209, 130 S.Ct. at 725; *Johnson v. United States*, 520 U.S. 461, 468–69 (1997); *Lilly v. State*, 365 S.W.3d 321, 328 (Tex. Crim. App. 2012); *Steadman*, 360 S.W.3d at 510.

Here, Darden never objected to his mother's exclusion from the courtroom during jury selection. When the trial court advised that only nontestifying family members could be present during jury selection, defense counsel asked merely if he could take a moment to advise Darden that his mother could not be present during jury selection.[4]

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. TEX. R. APP. P. 33.1(a)(1)(A); *Heigelmann v. State*, 362 S.W.3d 763, 770 n.9 (Tex. App.— Texarkana 2012, pet. ref'd). A reviewing court will not consider errors not called to the trial

---

[4]Darden did not file a motion for new trial complaining of the exclusion.

3

court's attention. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Even constitutional errors may be forfeited by failing to object at trial. *See Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008); *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002); *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996). A defendant's right to a public trial has not been numbered among either the few "systemic requirements" that a trial court must follow, regardless of the parties' wishes, or established as a "waiveable" right only, which must be implemented unless expressly waived. *See Mendez v. State*, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004); *see also Marin v. State*, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993), *rev'd on other grounds*, 891 S.W.2d 267 (Tex. Crim. App. 1994); *Fletcher v. State*, No. 14-96-01158-CR, 1998 WL 651616, at *3 (Tex. App.—Houston [14th Dist.] Sept. 24, 1998, pet. ref'd) (not designated for publication) (right to public trial). By failing to object at the time the trial court excluded his mother, a potential trial witness for both sides, Darden forfeited the right to present this complaint on appeal, even if it was error. *Mendez*, 138 S.W.3d at 342; *see also Levine v. United States*, 362 U.S. 610, 619–20 (1960) (closure of courtroom during grand jury hearing that continued into contempt hearing did not violate defendant's public-trial right absent request to open court to preserve error for appeal); *Brandley v. State*, 691 S.W.2d 699, 707 (Tex. Crim. App. 1985) (complaint that hearing in chambers violated right to public trial not preserved for review when trial objection addressed refusal of trial court to allow appellant to make bill of exceptions in courtroom). Because Darden did not object to the exclusion of his mother from the courtroom during jury selection, he has failed to preserve error, if any, resulting from such exclusion. This point of error is overruled.

4

*(2)    No Error Was Preserved Regarding Testimony that Darden Invoked His Right to Counsel*

Darden also contends that the State improperly placed before the jury the evidence that he had invoked the right to counsel. During the State's direct examination of Roxanne Warren, an officer with the Gilmer Police Department, the following testimony was elicited:

> Q.    [The State] Did he indicate after you told him that allegation, did he indicate he wanted to speak to you?
>
> A.    [Warren] No, he stated he had already requested an attorney.
>
> Q.    And did he think it was best that he spoke to an attorney before he spoke to you?
>
> A.    Yes.
>
> Q.    So that interview was ended and ceased and never really began.
>
> A.    Correct.

Darden did not move to strike and request an instruction that the jury disregard Warren's testimony to the effect that he had requested an attorney at the time of the interview. Darden further failed to object to the succeeding question, asking if Darden thought it best to speak to any attorney before he spoke with Warren. Generally, in order to preserve a complaint for appellate review, the record must show (1) that the complaint was made to the trial court by a request, objection, or motion that was timely and sufficiently specific to make the trial court aware of the grounds of the complaint and (2) that the trial court ruled adversely. *Tucker v. State*, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999). If the objection is sustained, counsel must then ask for an instruction to disregard. *Nethery v. State*, 692 S.W.2d 686, 701 (Tex. Crim. App. 1985); *Schumacher v. State*, 72 S.W.3d 43, 47 (Tex. App.—Texarkana 2001, pet. ref'd). If the

5

instruction is given, counsel must then move for a mistrial. *Nethery*, 692 S.W.2d at 701; *Schumacher*, 72 S.W.3d at 47. If counsel does not pursue the objection to an adverse ruling, error is not preserved. TEX. R. APP. P. 33.1; *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991). Error, if any, was not preserved for appellate review.

*(3)      The Trial Court Did Not Abuse Its Discretion in Denying Darden a Continuance*

After trial commenced, Darden filed a written motion for continuance complaining that the State failed to turn over all discovery material. Darden claimed surprise and the inability to obtain a fair trial.[5] The State responded that it had, with the exception of some letters which contained no exculpatory matter or evidence that would assist the State's case, turned over all the discovery. However, the State tendered the undisclosed letters to Darden in open court. The motion for continuance was overruled.[6]

On appeal, Darden contends the trial court abused its discretion in overruling his motion for continuance because an expectation that trial counsel could adequately review forty to fifty letters and upwards of 3,000 audio recordings provided shortly before trial is unreasonable. The written motion for continuance filed and presented to the trial court is based on the assertion that

---

[5]Darden also presented an oral motion for continuance after all witnesses were sworn, but before commencement of testimony, contending the State provided him with discovery on the eve of trial, including over 3,000 recorded telephone calls Darden made from jail. The discovery also included several letters written by Darden to an individual the State intended to call as a witness. The State responded that it disclosed the discovery the day after it became known. The State further indicated that it intended to introduce only one of those letters and one of the audio recordings of a telephone call placed by Darden, both of which were specifically identified by the State. The trial court overruled the oral motion for continuance. On appeal, Darden concedes that the oral motion for continuance preserved nothing for appellate review. *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009). The written motion for continuance was filed the following day.

[6]The State responded that all discovery material was provided to Darden.

6

the State was in possession of discovery material which was not provided to Darden.[7] It does not complain of the challenge of reviewing the just-produced data. An objection stating one legal basis may not be used to support a different legal theory on appeal. *Taylor v. State*, 20 S.W.3d 51, 56 (Tex. App.—Texarkana 2000, pet. ref'd). Here, however, a liberal reading of Darden's appellate point can be seen to fairly encompass the complaint made in the trial court. The record indicates that "a stack of letters" was turned over to Darden in open court.

The decision on whether to grant a motion for continuance is left to the sound discretion of the trial court. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). We, therefore, apply an abuse-of-discretion standard of review to the trial court's ruling. *Id.* To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his or her motion. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996) (per curiam) (citing *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995)). Prejudice will be found from the lack of a continuance "only if the record shows with considerable specificity how the defendant was harmed by the absence of more preparation time than he actually had." *Gonzales v. State*, 304 S.W.3d 838, 842–43 (Tex. Crim. App. 2010). Such a showing ordinarily is made at a hearing on a motion for new trial, where, almost always, the defendant will "be able to produce evidence as to what additional information, evidence or witnesses the defense would have had available if the motion for delay had been granted." *Id.* at 842. In addition to establishing harm as a prerequisite to obtaining appellate relief, a defendant must also demonstrate error in the denial of the motion for continuance:

---

[7]Darden does not claim that the State failed to disclose *Brady* material. *Brady v. Maryland*, 373 U.S. 83 (1963).

In addition to this necessary showing of harm, an appellant must apparently also show that the trial judge's ruling on the motion was error. This most likely requires a showing that the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial.

*Id.* at 843.

Here, the trial court could reasonably have rejected Darden's motion because all undisclosed discovery, represented to be material which was not helpful to the State or to the defense, was tendered to Darden in open court. We cannot say that the case made for delay was so compelling that no reasonable trial judge could conclude the trial should not be delayed.[8] Moreover, Darden has not established "specific prejudice to his cause arising from the trial court's failure to continue the trial." *Heiselbetz*, 906 S.W.2d at 511. A showing of specific prejudice "can ordinarily be made only at a hearing on a motion for new trial . . . ." *Gonzales*, 304 S.W.3d at 842–43. In the instant case, Darden did not file a motion for new trial or otherwise articulate what specific prejudice he suffered based on the denial of the motion for continuance. We conclude Darden has failed to demonstrate that the trial court erred in denying the motion for continuance and that the lack of a continuance harmed him. We overrule this point of error.

---

[8]At trial, the State elicited testimony from Christy Thomas, the recipient of the letters, indicating Thomas met with the investigator for the State Saturday, February 18, 2012, at which time the letters were turned over to the State. The State contacted defense counsel the following day and provided counsel with the documents that were admitted into evidence. These events took place before the time the jury was sworn.

8

*(4)     Failing to Read the Enhancement Allegation in the Jury's Presence Was Harmless Error*

After returning a guilty verdict on both counts of aggravated sexual assault of a child, the jury was returned to the jury room, at which time the State read the enhancement paragraph in open court in Darden's presence.[9]  Darden pled true to the enhancement allegation.

Darden claims the trial court erred in failing to have the enhancement allegation read in the presence of the jury in violation of Article 36.01 of the Texas Code of Criminal Procedure, which provides, in relevant part:

> The indictment or information shall be read to the jury by the attorney prosecuting. When prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held as provided in Article 37.07.

TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(1) (West 2007).  Darden claims that, because the enhancement allegation was never presented to the jury, the case should be reversed and a new

---

[9]The State filed its notice of intention to seek enhancement of the range of punishment January, 9, 2012.  The enhancement paragraph, as read by the State, alleged, in part:

> [T]he state of Texas . . . hereby gives notice to the defendant and his counsel of the state's intention to seek, prove and have submitted to the jury in the punishment phase of trial the issue of whether the defendant had previously been convicted of the felony offense listed below. Paragraph one, and it is further presented in and to said court that prior to the commission of the offense in this cause, hereinafter called the primary offense, that on or about the 23rd day of November, 2004, in Cause Number 7103503 in the 7th District Court of Smith County, Texas the defendant was convicted of the felony offense of injury to a child, elderly, or disabled, a final felony conviction and sentenced to seven years' confinement in the Institutional Division of the Texas Department of Corrections.  That should the jury find from the evidence and say so by their verdict that the defendant is the same person previously convicted of the offense set forth in paragraph one above, the range of punishment for this offense in this cause would be confinement for life or for a term not to exceed 99 years nor less than fifteen years in the Institutional Division of the Texas Department of Corrections if convicted under count one or count two of the indictment.  Additionally, a fine not to exceed $10,000 will be within the range of punishment prescribed by law.

9

trial should be granted, or alternatively, he should receive a new punishment hearing. We disagree.

Darden reasons that the decision in *Turner v. State*, 897 S.W.2d 786 (Tex. Crim. App. 1995), controls. In that case, the trial court neither required the enhancement allegation to be read nor received the defendant's plea to the enhancement allegation. *Turner* found that the trial court's action was error and that the error was not subject to a harm analysis. *Id*. at 789. Darden asks that we apply the same reasoning here.

Since *Turner*, however, the high criminal court has determined that all errors with the exception of certain federal constitutional errors labeled "structural" are subject to a harmless-error analysis.[10] *See High v. State*, 964 S.W.2d 637, 638 (Tex. Crim. App. 1998) (per curiam); *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (overruling "any other decision [that] conflicts with the present opinion"). Although *Turner* has never been explicitly overruled, subsequent cases have held that a violation of Article 36.01 is subject to harmless error analysis. *See Mendez v. State*, 212 S.W.3d 382, 388 (Tex. App.—Austin 2006, pet. ref'd); *Hernandez v. State*, 190 S.W.3d 856, 868 (Tex. App.—Corpus Christi 2006, no pet.); *Linton v. State*, 15 S.W.3d 615, 620 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

This Court has previously stated that entirely failing to read an indictment should be classified as a structural error. *Simmons v. State*, 106 S.W.3d 756, 760 (Tex. App.—Texarkana 2003, no pet.). In this case, however, the enhancement allegation was read to Darden, after

---

[10]Structural errors include the total deprivation of the right to counsel at trial, a judge who is not impartial, unlawful exclusion of members of the defendant's race from a grand jury, the right to self-representation at trial, and the right to a public trial. *See Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991) (Rehnquist, C.J., dissenting in part).

which he pled true. Darden complains only of the fact that the jury was not present at the time the enhancement allegation was read. This was not tantamount to a complete failure to read the enhancement allegations as required by the rule. Although it is error, it is not structural error and should be reviewed to determine if it was harmful.

When reviewing nonconstitutional error under Rule 44.2(b), we determine whether the error affected the defendant's substantial rights. *See Llamas v. State*, 12 S.W.3d 469, 471 n.2 (Tex. Crim. App. 2000). In determining this, we must decide whether the error had a substantial or injurious effect on the jury's verdict. *Id.*; *Hernandez*, 190 S.W.3d at 868; *Simmons*, 106 S.W.3d at 760.

In *Turner*, the court expressed concern that a defendant could be misled into believing the State has abandoned its intent to seek an enhanced sentence when the enhancement paragraphs are not read and the defendant does not plead to them. *See Turner*, 897 S.W.2d at 789. If so misled, "the defendant might take the stand and incriminate herself . . . for purposes other than to subject herself to an enhanced sentence." *Id*. Because of the inherent danger of self-incrimination, strict compliance with Article 36.01 was required to ensure a fair and impartial trial. *Id*.

Because Darden did not testify during the punishment phase of trial, there was no danger of self-incrimination. Further, the enhancement allegation was read to Darden outside the presence of the jury, and he pled true to that allegation. Therefore, Darden could not have been misled into believing the State intended to abandon the enhancement allegation.

11

*Turner* also recognized that "a defendant's right, under Article 36.01, to stand before the jury and plead 'untrue' to the enhancement paragraphs is a valuable right." *Id.* Because Darden pled true to the enhancement allegation, the effect of the denial of such right is not an issue here.[11]

In addition, the primary offenses here were both first degree felonies, each carrying a punishment range of life or for any term of not more than ninety-nine years or less than five years. *See* TEX. PENAL CODE ANN. § 12.32(a) (West 2011). The effect of the enhancement was to raise the minimum punishment from five years in prison to fifteen years in prison. *See* TEX. PENAL CODE ANN. § 12.42(c)(1) (West Supp. 2012). The punishments assessed by the jury—life imprisonment on each count—was the maximum Darden could receive, and both fell within the unenhanced punishment range, which suggests this error was harmless.

Given these circumstances, we conclude the failure to read the enhancement allegation and to receive Darden's plea of true to that allegation in the presence of the jury was harmless. We overrule this point of error.

*(5)    Allegations of Ineffective Assistance of Counsel Were Not Proven*

Darden contends he received ineffective assistance of counsel. The Sixth Amendment to the United States Constitution grants an accused the right to have the assistance of counsel for his or her defense, a right that has been interpreted to require the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The Sixth Amendment's guarantee of assistance of counsel is binding on the states by operation of the Fourteenth Amendment.

---

[11]The jury was instructed that Darden pled true to the enhancement allegation.

12

*McCoy v. Court of Appeals, Dist. 1*, 486 U.S. 429, 435 (1988). A conviction resulting from ineffective assistance of counsel is constitutionally infirm. *Strickland*, 466 U.S. at 688.

Ineffective assistance of counsel claims are evaluated under the two-part test formulated by the United States Supreme Court in *Strickland*, requiring a showing of both deficient performance and prejudice. *Strickland*, 466 U.S. at 689; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Fox v. State*, 175 S.W.3d 475, 485 (Tex. App.—Texarkana 2005, pet. ref'd). Claims of ineffective assistance of counsel "are not built on retrospective speculation," but must be firmly rooted in the record, with the record itself affirmatively demonstrating the alleged ineffectiveness. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002).

To prevail on this claim, Darden must prove by a preponderance of the evidence (1) that his counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 688; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance and was motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). "If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002). Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing an evaluation of the merits of ineffective assistance claims. *Thompson*, 9 S.W.3d at 813. "In the majority of

instances, the record on direct appeal is simply undeveloped and cannot adequately reflect" the reasoning of trial counsel. *Id*. at 813–14.

Darden claims that his trial counsel was ineffective because he (a) failed to move to quash the indictment, (b) advised the jury panel that Darden would not testify, (c) failed to object to improper questions, (d) failed to redact a recorded interview viewed by the jury, (e) failed to object to testimony informing the jury that Darden invoked his right to counsel before a second interview, (f) failed to object to the introduction of letters from Darden to Thomas, (g) called Ramona Lacy, the mother of the victim, to testify, (h) failed to object to the court's charge, (i) called Wade French as a witness during the punishment phase, and (j) failed to object to comments made by the State during closing argument. He also claims these cumulative failings demonstrate a pattern of ineffectiveness.

*(a)     Motion to Quash Indictment*

In support of his claim that trial counsel was ineffective in failing to file a motion to quash the indictment, Darden asserts that the rather imprecise language utilized in the second count of the indictment required correction. The second count recites that the victim's sexual organ was penetrated by "defendant's organ."[12] Darden admits, however, that the statute setting out the offense allows for a crime to be committed by penetration "by any means."[13] We do not find the failure to file a motion to quash the indictment to be deficient representation.

---

[12]Count one of the indictment alleges that the victim's sexual organ was penetrated by "defendant's sexual organ."

[13]TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(1).

14

*(b)     Disclosure to Jury Panel that Darden Would Not Testify*

Deficient performance is likewise not supported by the disclosure to the jury panel that Darden would not testify at trial.  Darden concedes that this matter, taken alone, does not constitute ineffective assistance.

*(c)     Failure to Object to Improper Questions*

Among other issues Darden claims reveal a pattern of ineffectiveness is the failure to object to certain questioning of the sexual assault nurse examiner (SANE),[14] as well as certain testimony offered by Thomas[15] and investigator Warren.[16]  Trial counsel's failure to object can be presumed to be reasonable trial strategy.  *Strickland*, 466 U.S. at 689.  "The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance."  *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).  As is typically true, trial counsel's reasons for not objecting do not appear in the record.  "If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal."  *Ortiz*, 93 S.W.3d at 88–89.  Because trial counsel's failure to object may have been based on trial

---

[14]Susan Hinson, the SANE who interviewed the child victim, was asked if she has testified in other cases in which a defendant was found guilty even though the victim did not want to disclose everything to the nurse during an interview.  The nurse responded affirmatively.

[15]Thomas testified that she was engaged in a romantic relationship with Darden while Darden was living with the victim's mother.  Thomas also testified about a certain letter she received from Darden which attempts to explain the circumstances of the assault.

[16]Warren testified that lying is common for those accused of a crime of this nature.

15

strategy, we are unable to conclude counsel's actions fell outside the wide range of reasonable professional assistance.

(d)     *Failure to Redact Recorded Interview*

Other complaints center on the substance of the interview between Warren and Darden. Darden complains that the interview, which was published to the jury, should have been redacted by deleting certain information, including a discussion regarding a physical altercation between Darden and the child victim's mother on the day before Darden's arrest, a disclosure that Darden was on parole at the time of the interview, and information indicating Darden was involved in a romantic relationship with Thomas while he was living with the victim's mother. Darden claims that the referenced information is irrelevant and that, even if marginally relevant, it should have been excluded. *See* TEX. R. EVID. 403.

It is not enough to show that, with the benefit of hindsight, counsel's actions or omissions during trial "were merely of questionable competence." *Lopez v. State*, 343 S.W.3d 137, 142–43 (Tex. Crim. App. 2011). Here, as in most direct appeals, the record is silent as to why trial counsel did not object to the inclusion of the portions of the Warren/Darden interview of which Darden complains. The record could have been supplemented through a hearing on a motion for new trial, but such a motion was not filed. Darden has thus failed to meet his burden under the first prong of *Strickland*.

(e)     *Failure to Object to Invocation-of-Counsel Testimony*

Additionally, Darden complains of trial counsel's failure to object to testimony informing the jury that Darden invoked his right to counsel before a second interview with Warren. When

16

counsel is not provided an opportunity to explain his actions, this Court will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). Because the record is silent as to why counsel failed to object, we employ the strong presumption that counsel's conduct, in possibly refusing to draw the jury's attention to the invocation issue through an objection, could be considered sound trial strategy.

### (f)    Failure to Object to Introduction of Letters

Darden further complains that trial counsel failed to object to testimony from Thomas that she was engaged in a romantic relationship with Darden while Darden was living with the victim's mother.[17] In the same connection, certain letters were admitted into evidence through Thomas, to which counsel did not object. While Darden fails to explain or to otherwise analyze the damaging evidence in the letters, it is apparent that they were intended as an attempt by Darden to explain the circumstances of his encounter with the victim in order to maintain his relationship with Thomas.[18] The letters were properly authenticated by Thomas and were clearly relevant to the issue of Darden's guilt. *See Simpson v. State*, 181 S.W.3d 743, 749 (Tex. App.—

---

[17]As previously discussed, the record is silent as to why counsel did not object to testimony regarding the allegedly romantic relationship between Darden and Thomas.

[18]Both letters are incriminating. In the initial letter, Darden explained to Thomas:

> I am sorry for lying in the begining [sic] . . . . I didn't do this s[ ]t on purpose!! . . . . I had drinked [sic] myself asleep and when I woke up [the victim] was in bed and it happen [sic], but I stope [sic] myself when I realize what was going on she try to ge [sic] me to keep going I didn't I made her get out . . . . This only happen [sic] one time . . . and I'am [sic] not liying [sic] about that . . . .

Defense counsel stated that he had no objection to Exhibits 34 and 35 (a second letter from Darden to Thomas, proclaiming, in part, that "I will NOT DO IT ANYMORE").

17

Tyler 2005, pet ref'd) (excerpt of letter appellant wrote to girlfriend while in jail was material because it was declaration made by appellant regarding his guilt).

Even assuming the letters were inadmissible, the failure to object does not necessarily constitute ineffective assistance of counsel. *Greene v. State*, 928 S.W.2d 119, 123 (Tex. App.—San Antonio 1996, no pet.). Because the record is silent as to counsel's possible strategies, we decline to speculate why no objection was made. We may not "reverse a conviction on ineffective assistance of counsel grounds when counsel's actions or omissions may have been based on tactical decisions, but the record contains no specific explanation for counsel's decisions." *Bone*, 77 S.W.3d at 830. Because the record does not affirmatively demonstrate that this omission was attributable to ineffectiveness, the presumption of reasonable professional assistance has not been defeated.

*(g)    Decision to Call Lacy as a Defense Witness*

Darden further contends trial counsel was ineffective in calling the victim's mother, Lacy, to testify. Darden contends that damaging evidence was elicited from this witness regarding an altercation between Darden and Lacy the day before Darden's arrest. We cannot conclude trial counsel was ineffective merely because he made the tactical decision to call Lacy as a witness for the purpose of impugning her credibility. The decision to call a witness is generally a matter of trial strategy. *See, e.g.*, *Rodd v. State*, 886 S.W.2d 381, 384 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Moreover, counsel was pursuing a strategically legitimate line of questioning when Lacy volunteered that she and Darden became involved in an

18

altercation.[19]  Absent a record of the reason for counsel's conduct, we must defer to counsel's decisions.  *See Bone*, 77 S.W.3d at 830.

During Lacy's cross-examination, further evidence of the altercation between Lacy and Darden was elicited.  Trial counsel objected to the introduction of photographs depicting injuries to Lacy as a result of that altercation.  After the trial court overruled the objection, further information regarding the altercation came to light.  Trial counsel may have made a decision, as a matter of sound trial strategy, to draw no further attention to this matter by way of additional objections, in light of the trial court's ruling on the photographic evidence.

*(h)      Failure to Object to Court's Charge*

It is further claimed counsel was ineffective in failing to object to the court's charge.  The sole argument made here is that the instruction regarding extraneous evidence appears to be improper.  We are not told why the instruction is improper or what objection should have been made to this instruction.  We thus overrule this issue as inadequately briefed.  *See* TEX. R. APP. P. 38.1(h), (i) (brief must contain clear and concise argument for contentions, with appropriate citations to authorities and to record).  An inadequately briefed issue may be waived on appeal. *McCarthy v. State*, 65 S.W.3d 47, 49 n.2 (Tex. Crim. App. 2001).

*(i)      Decision to Call French as a Witness During Punishment Phase*

Darden next complains counsel was ineffective in calling French as a witness in the punishment phase of the trial.  French had no opinion on whether Darden posed a danger to society, so Darden complains the evidence had no value.  As previously explained, we cannot

---

[19]Lacy volunteered that, when Darden emerged from a locked room, "he immediately jumped on me."

19

conclude that a tactical decision to call a witness amounts to ineffective assistance of counsel. *See, e.g.*, *Rodd*, 886 S.W.2d at 384.

### (j) Failure to Object to State's Comments in Closing

Finally, Darden complains of counsel's failure to object to suggestions he claims were made by the State during closing argument that the jury should consider how parole applies in this case, as such was forbidden by the court's charge. The court's charge included an extensive discussion of how parole applies in this case[20] and advised the jury that the application of parole law will depend on decisions made by prison and parole authorities. In closing, the State informed the jury that Darden "will be entitled to parole at some point." The State then clarified that Darden will "get a chance at parole."

The court's charge specifically stated that "eligibility for parole does not guarantee that parole will be granted." When read in context, the complained-of argument did not suggest to the jury that they should consider the possibility of parole in a manner forbidden by the court's charge.

---

[20]The charge of the court indicated:

> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.
> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. Eligibility for parole does not guarantee that parole will be granted. It cannot be accurately predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment because the application of these laws will depend on decisions made by prison and parole authorities.
> You may consider the existence of parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. Such matters come within the exclusive jurisdiction of the Pardon and Parole Division of the Texas Department of Criminal Justice and the governor of Texas.

*(k)* *Pattern of Ineffectiveness*

Darden maintains that the matters outlined above illustrate a pattern that establishes ineffectiveness of counsel. Because the record before us does not support a conclusion that the complained-of conduct by trial counsel fell below the standard of prevailing professional norms, the alleged conduct cumulatively did not fall below that standard. *See Rodriguez v. State*, 336 S.W.3d 294, 303 (Tex. App.—San Antonio 2010, pet. ref'd) (because "appellant did not meet her burden of establishing individual instances of ineffective assistance of counsel, we hold that she cannot show an adverse cumulative effect from the actions of trial counsel").

We overrule Darden's ineffective assistance of counsel claims.

We affirm the judgment of the trial court.

Josh R. Morriss, III
Chief Justice

Date Submitted:     December 27, 2012
Date Decided:       March 1, 2013

Do Not Publish

21